JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-09136-RGK-JEM | Date | May 4, 2021 |
|---|---|---|---|
| Title | *Alves v. Hewlett Packard Enterprise Comprehensive Welfare Benefits Plan et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order and Judgment Re Court Trial

## I. INTRODUCTION

Michael Alves ("Plaintiff") filed a complaint against Hewlett Packard Enterprise Comprehensive Welfare Benefits Plan ("Plan") and the Hewlett Packard Enterprise Company ("HP") (collectively, "Defendants"). The suit arose out of the Plan's denial of coverage for short-term and long-term disability benefits to Plaintiff. Plaintiff then sued to enforce his rights under the Employee Retirement Income Security Act of 1974 ("ERISA").

The Court held a bench trial on these issues and found that Sedgwick, the entity HP authorized to determine disability-benefits eligibility, had not abused its discretion in its denial of short-term and long-term disability benefits to Plaintiff.

Plaintiff appealed the Court's decision to the Ninth Circuit. The Ninth Circuit upheld the denial of the short-term disability ("STD") benefits but remanded on the long-term disability ("LTD") benefits claims, instructing Sedgwick to redo its LTD evaluation.

Following the Ninth Circuit's directive, Sedgwick reviewed Plaintiff's eligibility for LTD benefits. After examining the evidence, Sedgwick again denied Plaintiff's claim. After that denial Plaintiff, once again, sought the Court's review of Sedgwick's denial.

The parties have submitted their briefs to the Court for a bench trial. For the following reasons, the Court grants judgment for Defendants.

## II. RELEVANT PLAN PROVISIONS

Plaintiff argues that Defendants unfairly denied him LTD benefits. To qualify for these benefits, Plaintiff had to show that he was "Totally Disabled" under the Plan's definition. But the definitions vary based on the time passed since the onset of the injury or sickness. The parties agree that for Plaintiff to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-09136-RGK-JEM | Date | May 4, 2021 |
|---|---|---|---|
| Title | *Alves v. Hewlett Packard Enterprise Comprehensive Welfare Benefits Plan et al.* | | |

obtain LTD benefits he needed to prove that he was "Totally Disabled" for two periods: after 26 weeks following the onset of an injury or sickness but before 24 months, and after 24 months. (Plan § 2(q)(i)–(iii), AR 4927); (*see also* Joint Statement of Undisputed Facts ¶ 6, ECF No. 80).

For the period after 26 weeks but before 24 months, an employee is "Totally Disabled" when they are "unable to perform the Essential Functions of his Own Occupation." (Plan § 2(q)(ii), *id.*). "Essential Functions" are "those functions that are required for the performance of an occupation and that cannot be reasonable[sic] omitted or modified." (Plan § 2(q)(i), *id.*). And "Own Occupation" "means the type of work in which the Participant was engaged prior to the onset of his Total Disability and is not limited to the Participant's Usual Occupation or to jobs that provide any particular earnings level." (AR 4834).

But after 24 months, an employee is "Totally Disabled" when they are "continuously unable to perform any occupation for which he is or may become qualified by reason of his education, training or experience." (Plan § 2(q)(iii), AR 4927).

### III.  FINDINGS OF FACT

The following facts are based on the administrative record.

#### A.  Background

Until January 2016, HP employed Plaintiff as a Technology Consultant IV. (AR 453–54, 485). In that role, Plaintiff worked primarily with computers, conducting data analyses, and leading a team of technical support personnel. (AR 486). According to Defendants, Plaintiff's job was almost entirely sedentary, "rarely" or "never" requiring standing, walking, or lifting of heavy items. (AR 485). Plaintiff, however, contests this characterization, arguing that his job "is not 100% sedentary" because he must "be able to travel to Data Centers and pick up or move heavy equipment of 50 lbs or more." (AR 410).

On January 15, 2016, Plaintiff submitted a claim for STD benefits with Sedgwick, the administrative manager for HP's ERISA plan. Plaintiff based his claim on his congestive heart failure, bilateral lower extremity edema, and sleep apnea. (AR 453). About a week later, on January 22, 2016, Sedgwick approved Plaintiff for STD benefits under the Plan. (*See* AR 412). On June 13, 2016, however, Sedgwick notified Plaintiff that his STD benefits would expire on June 4, 2016 because he was not "Totally Disabled." (*Id.*) Sedgwick determined that the medical information provided by Plaintiff's doctor, Dr. Sanjiv Patel, did not show that he would be unable to perform his normal job functions passed June 3, 2016. (*Id.*) Plaintiff appealed that decision. In response, Sedgwick hired two doctors, Dr. Weber and Dr. Conrad, both of whom concluded that Plaintiff was not "Totally Disabled" under the Plan's STD benefits definition. (AR 385–86).

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-09136-RGK-JEM | Date | May 4, 2021 |
|---|---|---|---|
| Title | *Alves v. Hewlett Packard Enterprise Comprehensive Welfare Benefits Plan et al.* | | |

While appealing the denial of his STD benefits Plaintiff also sought LTD benefits. Sedgwick denied that claim as well, concluding that Plaintiff was not "Totally Disabled" under the Plan. (*See* AR 683, ECF No. 37-5[1]). But after Plaintiff appealed that decision, Sedgwick offered another rationale for denying him LTD benefits—Plaintiff had not satisfied the "waiting period" requirement under the Plan. (AR 706–07).

Plaintiff sued arguing that Defendants had abused its discretion by denying him STD and LTD benefits. The Court affirmed both denials, which Plaintiff appealed to the Ninth Circuit. The Ninth Circuit ultimately upheld the denial of the STD benefits but vacated the Court's judgment "affirming the denial of [Plaintiff's] long-term disability benefits appeal." (Ninth Circuit Order at 2–3, ECF No. 52). It then ordered Sedgwick to redo its LTD benefits evaluation because Sedgwick abused its discretion by asserting that Plaintiff had failed to satisfy the "waiting period" period to deny him LTD benefits when he had "clearly met the requirement." (*Id.*)

### B. Remand Review of Plaintiff's LTD Claim

Following the Ninth Circuit's instructions, Sedgwick invited Plaintiff to submit new evidence to support his LTD claim. In response, Plaintiff submitted treatment notes from Kaiser Permanente from February 2019 through March 2020 for diabetes, diastolic heart failure, and hypertension. (AR 100-224). He also submitted additional records from Dr. Patel from 2016 through 2018. (AR 232–312).

Sedgwick hired four doctors to review Plaintiff's medical records: Dr. Taj Jiva, Dr. Rizwan Karatela, Dr. Heidy Connolly, and Dr. Karen Kane. (AR 848–60, 821–35, 836-47, 862–77). All of them agreed, for various reasons, that Plaintiff was not "Totally Disabled" under the Plan's definition. (*See id.*) Because of their conclusions, Sedgwick obtained a Transferrable Skills Analysis ("TSA"), (AR 907), and Labor Market Study ("LMS"), (AR 913–19), and determined that Plaintiff could perform other jobs in his geographic area. Sedgwick then submitted the medical reports, TSA, and LMS to Plaintiff for review and comment. (AR 921).

On September 21, 2020, Plaintiff submitted his Social Security Administration ("SSA") disability record along with pictures of his lower leg edema to Sedgwick. (AR 1001–695). The record showed that the SSA had twice denied his claim for social security benefits (once on initial review and on reconsideration). (AR 1307–21, 1332–48). Plaintiff appealed these denials to an administrative law

---

[1] The Court cites the Administrative Record in a separate filing because the parties did not properly cite the denial in their briefs or the undisputed joint statement. As the Administrative Record here is over 5500 pages, and the Court is not a "pig[] hunting for truffles" it declined to comb through the entire Administrative Record to identify this letter. *Christian Legal Soc. Chapter of Univ. of California v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010). In any event, this letter's existence is undisputed and was part of the administrative record in the previous bench trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-09136-RGK-JEM | Date | May 4, 2021 |
|---|---|---|---|
| Title | *Alves v. Hewlett Packard Enterprise Comprehensive Welfare Benefits Plan et al.* | | |

judge ("ALJ") who overturned these decisions and held that Plaintiff was entitled to social security benefits. (AR 1376).

To review the new evidence, Sedgwick hired Dr. Stephen Broome, Dr. Frank Polanco, and Dr. Brian Craig Strizik. (AR 4648–58, 4659–71, 4672–82). It also requested addendums from Dr. Connolly, (AR 4648–58), and Dr. Jiva, (AR 4706–23). All of whom again concluded that Plaintiff was not "Totally Disabled." Although Sedgwick allowed Plaintiff to respond to these medical reports, he declined.

Finally, on October 21, 2020, Sedgwick notified Plaintiff that it had completed its review and was upholding the denial of the LTD benefits. (AR 4804–09).

### IV. JUDICIAL STANDARD

A benefit determination under an ERISA plan is reviewed de novo, unless the benefit plan gives the plan administrator or other fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When the plan confers discretionary authority, the decision is reviewed for abuse of discretion. *Kearney v. Standard Ins. Co.*, 175 F.3d 1094, 1089 (9th Cir. 1999).

The Plan here expressly grants discretion to Sedgwick to determine eligibility under the Plan.[2] The appropriate standard of review is therefore abuse of discretion. In applying this standard, the Court "may review only the administrative record." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006).

When the alleged abuse of discretion pertains to a factual determination, the test is whether the court is "'left with a definite and firm conviction that a mistake has been committed,'" though it "may not merely substitute [its] view for that of the fact finder." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (quoting *United States v. Hickson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). The court must "consider whether application of a correct legal standard was '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" *Salomaa*, 642 F.3d at 676; *see also Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) (characterizing the factual support inquiry as whether the administrator "relie[d] on clearly erroneous findings of fact"). This standard "does not permit the overturning of a

---

[2] Specifically, the Plan provides that:
> The Company, in its capacity as the plan administrator, is the named fiduciary which has the discretionary authority to determine eligibility for Plan participation and entitlement to Plan benefits in accordance with the terms of the Plan; except that with respect to the determination of entitlement to Plan benefits (including initial claims and review of appeals), such discretionary authority is delegated to the Claims Administrator, and such Claims Administrator shall perform its services as a named fiduciary." (Plan § 9(a), AR 4865.)

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-09136-RGK-JEM | Date | May 4, 2021 |
|---|---|---|---|
| Title | *Alves v. Hewlett Packard Enterprise Comprehensive Welfare Benefits Plan et al.* | | |

decision where there is substantial evidence to support the decision, that is, where there is relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Snow v. Standard Ins. Co.*, 87 F.3d 327, 331–32 (9th Cir. 1996) (internal quotations omitted) (*overruled in part on other grounds by Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999)).

**V.        DISCUSSION**

Under ERISA, a claims administrator must provide "adequate notice in writing" of the grounds on which it denies a claim as well as a "full and fair review" of the denial of the claim. *See* 29 U.S.C. § 1133. Plaintiff argues that Sedgwick abused its discretion by both denying his LTD benefits claim and failing to provide him with a "full and fair review" of its denial. The Court disagrees.

**A.        The Medical Determinations**

Plaintiff submitted his claim for disability benefits on January 15, 2016 due to congestive heart failure, hypertension, diabetes, sleep apnea, and lower extremity edema. (AR 453). Thus, to qualify for LTD benefits, Plaintiff needed to establish that he was "Totally Disabled" and unable to perform the "Essential Functions" of his "Own Occupation" as of July 15, 2016 and that he was "unable to perform any occupation" as of January 15, 2018. (Joint Statement of Undisputed Facts at 2).

In its previous Order, the Court found that Sedgwick's conclusion that Plaintiff's job was sedentary was supported by substantial evidence. (Order at 6, ECF No. 44). Ultimately, the record showed that Plaintiff's position required little to no physical exertion. Thus, the question becomes, given Plaintiff's various medical issues, could he perform a mostly sedentary job? Plaintiff asserts the answer is no.

Having considered Plaintiff's arguments together with the administrative record, the Court finds that Sedgwick did not abuse its discretion when it came to the opposing conclusion. Sedgwick's denial was based on a review of an extensive number of medical documents such as progress notes from at least 7 individual doctors; progress notes from Kaiser Permanente; ECG readings; and labs from Quest Diagnostics. (AR 4805–06). As stated above, 7 of Sedgwick's doctors reviewed Plaintiff's medical records and determined that Plaintiff could work. It was reasonable for them to reach this conclusion based on the medical records, even though Plaintiff might have difficulty with a job requiring physical exertion given its mostly sedentary nature. That some of the medical information suggests otherwise does not mean there was an abuse of discretion. Dr. Maryam Balouch, one of Plaintiff's cardiologists, for example, noted that Plaintiff could only sit for 10 minutes without having his legs elevated. (AR 1703–04). But because the Plan grants discretion to Sedgwick to determine eligibility for disability benefits, it is not the Court's role to "substitute [its] view for that of the fact finder." *Salomaa*, 642 F.3d at 676. Thus, the conclusions of Sedgwick's doctors were supported by substantial evidence, even if not

JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-09136-RGK-JEM | Date | May 4, 2021 |
|---|---|---|---|
| Title | *Alves v. Hewlett Packard Enterprise Comprehensive Welfare Benefits Plan et al.* | | |

all of the evidence supported them. Thus, Defendants did not abuse their discretion in reaching their conclusion.

### B. Plaintiff's Arguments

Plaintiff identifies three reasons by which Sedgwick improperly denied him LTD benefits: (1) Plaintiff cannot sit for more than four hours in an eight-hour day and is therefore disabled as a matter of law; (2) Sedgwick did not adequately explain why it deviated from the SSA's decision that Plaintiff was disabled; and (3) Sedgwick ignored stress and Plaintiff's leg edema[3]. (Pl.'s Opening Brief at 8–12, ECF No. 85). The Court addresses each argument below.

#### 1. *The amount of time Plaintiff can sit*

The Ninth Circuit has held that an employee cannot perform a "sedentary" job if they cannot sit for more than four hours in an eight-hour day. *Armani v. Northwestern Mut. Life Ins. Co.*, 840 F.3d 1159, 1163 (9th Cir. 2016). In *Armani*, a plaintiff's doctors concluded that he "could not sit for more than four hours a day" because of his back issues. *Id.* Plaintiff argues that the medical records demonstrate that Plaintiff, like in *Armani*, cannot sit for more than four hours in an eight-hour day.

Plaintiff zeroes in on one portion of Dr. Broome's report to support his assertion. There, Dr. Broome wrote that Plaintiff "has functional limitations and requires appropriate restrictions of sitting up to 30 minutes continuously per hour in an 8-hour workday." (AR 4655). Reading this, Plaintiff urges the Court to conclude that Plaintiff cannot sit for more than four hours in a day in an 8-hour day.

But Plaintiff's understanding of Dr. Broome's report is not the only interpretation. While the report also specifies that Plaintiff should not stand and walk for 15 continuous minutes per hour in an 8-hour workday, another interpretation could be that Plaintiff can sit for 30 minutes, get up for 5 minutes, and then sit down for the final 25 minutes. (*See* AR 4655). In any event, Dr. Broome determined that Plaintiff's restrictions would not preclude him from performing his job from July 15, 2016 or from January 15, 2018 onward. (AR 4657).

Still, Plaintiff contends Dr. Balouch's note, one of his cardiologists, also proves that he is disabled as a matter of law. In that note, submitted to Sedgwick on August 31, 2020, Dr. Balouch said Plaintiff could only sit for 10 minutes without having his legs elevated, would need to keep them

---

[3] Plaintiff also seems to argue that it was improper for Sedgwick to rely on some of its doctor's opinions because they wrote their reviews before Plaintiff submitted additional evidence, such as the note from Dr. Balouch. (Pl.'s Opp'n at 2, ECF No. 86). Even if the Court were to disregard those doctor's opinions, many other doctors, as discussed below, had Plaintiff's entire medical record when they evaluated Plaintiff's medical history.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-09136-RGK-JEM | Date | May 4, 2021 |
|---|---|---|---|
| Title | *Alves v. Hewlett Packard Enterprise Comprehensive Welfare Benefits Plan et al.* | | |

elevated for 50 minutes, and can only sit for "at most 2 hrs" in an 8-hour day without his legs being elevated. (AR 1703–04).

But even with this additional evidence, Sedgwick decided that "the available clinical findings [did] not support functional impairment during the period under review." (AR 4809). Perhaps this was because Dr. Balouch's note did not explain why Plaintiff needing to elevate his legs would impede his ability to complete his sedentary job. And several doctors—Dr. Broome, Dr. Polanko, Dr. Strizik, and Dr. Jiva in particular—all of whom had Dr. Balouch's note when they made their final evaluations determined that Plaintiff was not totally disabled. (*See* AR 4655, 4664, 4679, 4709)

At bottom, while it may be possible to draw different conclusions from Dr. Balouch's assessment and Dr. Broome's report, the determination that Plaintiff could perform the "essential functions of his Usual Occupation" and "perform any occupation" is not implausible. *Cf. Salomaa*, 642 F.3d at 676 (a factual determination is an abuse of discretion only if the claims administrator's inference is "implausible" or "illogical"). Thus, Sedgwick did not abuse its discretion in finding that Plaintiff was not disabled.

    2.    *Deviation from the SSA decision*

Plaintiff also argues that Sedgwick abused its discretion in denying Plaintiff LTD benefits because it deviated from the SSA's determination. The Court disagrees.

ERISA plans are not bound by the SSA's disability determination. *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 635 (9th Cir. 2009); *Barnett v. S. Cal. Edison Co. Long Term Disability Plan*, 633 Fed. App'x 872, 874 n.4 (9th Cir. 2015). But even though these plans are not bound by the SSA's conclusions, they also may not ignore them. *See Salz v. Standard Ins. Co.*, Fed. App'x 723, 724 (9th Cir. 2010). "Complete disregard for a contrary conclusion without so much as an explanation raises questions about whether an adverse benefits determination was 'the product of a principled and deliberative reasoning process.'" *Montour*, 588 F.3d at 635 (quoting *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 124 (2008)).

Sedgwick explained its reasons for disagreeing with the SSA: "Although, we have taken that information into account in making our determination, we are making a different decision than the Social Security Administration for the following reasons. The Social Security Administration applies a different definition of disability than does the Plan. Also, the Social Security Administration gives special deference to the treating physician's opinion. The "Plan" takes other information into account in the determination of disability." (AR 4809). Thus, Sedgwick gave three distinct reasons for differing from the SSA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-09136-RGK-JEM | Date | May 4, 2021 |
|---|---|---|---|
| Title | *Alves v. Hewlett Packard Enterprise Comprehensive Welfare Benefits Plan et al.* | | |

While Plaintiff argues that Sedgwick's explanation is insufficient, an inadequate explanation is not an abuse of discretion per se. *See Montour*, 588 F.3d at 635 ("In fact, not distinguishing the SSA's contrary conclusion *may* indicate a failure to consider relevant evidence.") (emphasis added). This is especially true when, as discussed above, there is substantial evidence to support Sedgwick's decision. Indeed, many of the ALJ's findings of fact support Sedgwick. The ALJ, for example, found that Plaintiff could "sit for 6 hours out of an 8-hour day; and stand walk for 2 hours out of an 8-hour day with normal breaks." (AR 1674). It also determined that Plaintiff could "perform a range of sedentary work as specified above." (AR 1675). The key reason for the SSA's conclusion was that another SSA regulation, Medical-Vocational Rule 201.06—one that Sedgwick is not subject to—required the ALJ to find that Plaintiff was disabled. (AR 1676).

In sum, it was reasonable for Sedgwick to conclude differently from the SSA given the SSA's rationale, its findings of fact, and the medical evidence that supports Sedgwick. And since the Court may only overturn a decision if it was completely illogical, implausible, or lacking in factual support, the Court cannot overturn Sedgwick's determination.

        3.    <u>*Stress and leg edema*</u>

Plaintiff's final argument is that Sedgwick did not consider stress, which exacerbates Plaintiff's shortness of breath issues, and his leg edema in their evaluation. But Plaintiff has not explained why he believes Sedgwick did not account for these issues. In fact, many of Sedgwick's doctors confirmed that they considered Plaintiff's entire medical record, which would include references to stress and Plaintiff's leg edema. (*See, e.g.*, Broome Report at AR 4652) (confirming that "All available documentation submitted for this claim has been reviewed"); (Jiva Report at AR 4714) (same); (Polanco Report at AR 4666) (same).

For example, Dr. Broome, Dr. Jiva, and Dr. Polanco all discussed Plaintiff's lower leg edema and complaints of shortness of breath in their reports. While they noted that these conditions would require some restrictions, they all concluded that Plaintiff could still do his sedentary job. (*See, e.g.*, Broome Report at AR 4657) ("The claimant has been having shortness of breath with minimal exertion and needed to rest frequently. Considering this evidence, the claimant has functional limitations and requires appropriate restrictions; however, these restrictions would not preclude him from performing the regular, unrestricted duties of his occupation from 07/15/2016 ongoing, as his job requires only frequently sitting; and rarely standing, walking, lifting, carrying pushing, pulling or twisting."); (Jiva Report at AR 4717) ("His respiratory status is stable. He has no acute or chronic respiratory failure. He is not compliant with CPAP, which may worsen his leg edema and shortness of breath and easy fatigue . . . Therefore, the claimant does not have functional impairments[.]"); (Polanco Report at AR 4666, 4669) ("[Plaintiff] also developed chronic lower extremity edema and prolonged periods of shortness of breath at night . . . . [Plaintiff] would need appropriate restrictions, but he would be able to perform his regular sedentary occupation[.]").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-09136-RGK-JEM | Date | May 4, 2021 |
|---|---|---|---|
| Title | *Alves v. Hewlett Packard Enterprise Comprehensive Welfare Benefits Plan et al.* | | |

Thus, a review of the administrative record suggests that Sedgwick's doctors did in fact consider stress and Plaintiff's lower leg edema. That these doctors did not explicitly write down every possible exacerbating factor does not suggest that those considerations were not accounted for.

Plaintiff's also argues that Sedgwick improperly relied on many of the doctor's evaluations because the doctors were required to only evaluate Plaintiff's medical history based on their specialties, rather than a global perspective. Plaintiff analogizes this case to *Toven v. Metropolitan Life Ins. Co.*, No. CV 06-7260-ABC (RZx), 2008 WL 5101727 (C.D. Cal. Dec. 2, 2008). There, an ERISA plan hired two doctors to evaluate a claimant's disability benefits. *Id.* at *11. But "neither doctor was asked to, or did, examine the overall state of Plaintiff's health." *Id.* That failure was an abuse of discretion because the ERISA plan "failed to consider[] the global nature of Plaintiff's health concerns." *Id.*

But this situation is unlike the one in *Toven*. To start, Plaintiff has cited no authority, and the Court is unaware of any, that hiring specialists to conduct medical reviews is problematic in the ERISA context. In any event, Sedgwick hired at least one doctor, Dr. Polanco, to review Plaintiff's files from a whole-body perspective. (Polanco Report at AR 4669) ("Based on all clinical data from the Whole Body Cumulative/occupational Medicine perspective . . . this would not preclude full-time work activities as he retains a functional gait, mobility, strength, and has no focal neurological deficits."). And Sedgwick hired Dr. Kane to review Plaintiff's record from an "internal medicine/occupational medicine" perspective, as opposed to one individualized specialty. (AR 872). Finally, it also asked Dr. Broome to analyze Plaintiff from an internal medicine view. (Broome Report at AR 4657) ("From the perspective of Internal Medicine, the claimant is able to perform the regular, unrestricted duties of his occupation from 07/15/2016 ongoing."). Thus, the administrative record shows Sedgwick did in fact evaluate Plaintiff's medical record from a global perspective.

## VI. EVIDENTIARY OBJECTIONS

To the extent the Court has relied upon evidence to which the parties object, those objections are overruled.

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-09136-RGK-JEM | Date | May 4, 2021 |
|---|---|---|---|
| Title | *Alves v. Hewlett Packard Enterprise Comprehensive Welfare Benefits Plan et al.* | | |

### VII. CONCLUSION

For the foregoing reasons, the Court concludes that Defendants did not abuse their discretion in denying Plaintiff's claim for LTD benefits.

Accordingly, the Court **ENTERS JUDGMENT FOR DEFENDANTS**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer _____